# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

NELSON HANKISON,

            Petitioner,    :    Case No. 1:12-cv-385

   - vs -                           District Judge Timothy S. Black
                                        Magistrate Judge Michael R. Merz

WARDEN Lebanon Correctional Institution,

                                        :

            Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Nelson Hankison brought this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. He pleads that he was convicted in the Scioto County Common Pleas Court of aggravated murder, aggravated robbery, aggravated arson, tampering with evidence, grand theft of a motor vehicle, and kidnapping on September 28, 2009 (Petition, Doc. No. 1, PageID 1, ¶¶ 2, 5). As a consequence, he was sentenced to be imprisoned for thirty years to life. *Id.* ¶ 3. He pleads the following Ground for Relief:

>**Ground One:  [Ineffective Assistance of Trial Counsel][1]**
>
>**Supporting Facts:**
>
>(I)    Trial counsel failed to object to double hearsay of Detective Blaine, the lead detective, recounting numerous critical statements from the State's most important witness (Ms. Dees), thereby allowing the State to use repetition to bolster credibility and veracity of Ms. Dees testimony when she did testify.
>
>(II)   Trial counsel twice informed the jurors that Mr. Hankison had invoked his Fifth Amendment right to refuse to talk to

---

[1] Petitioner does not actually state a Ground One. The Court infers the nature of the claim from the supporting facts.

1

> investigators. The first time occurred during opening statements, the second time occurred during trial counsel's cross-examination of Detective Blaine.
>
> (III) Trial counsel's failure to object to the double hearsay testimony of Detective Blaine, along with his disclosing to the jury on two separate occasions that Mr. Hankison had invoked his Fifth Amendment right to silence constitute ineffective assistance of counsel.

*Id.* at PageID 5.

These claims of ineffective assistance of trial counsel were raised by Hankison on direct appeal and decided by the Ohio Fourth District Court of Appeals on the merits. *State v. Hankison,* 2010 Ohio 4617, 2010 Ohio App. LEXIS 3882 (Ohio App. 4th Dist. 2010). The Ohio Supreme Court dismissed a discretionary appeal without opinion. *State v. Hankison,* 127 Ohio St. 3d 1546 (2011).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The last Ohio court to render a decision on the merits was the Fourth District Court of Appeals. Because its opinion is more than twenty pages in length, it will not be quoted here verbatim; the reader is referred instead to the full opinion cited above. In relevant part the court of appeals found that the victim, Sonny Hamilton, was a friend of Hankison. *State v. Hankison,* 2010 Ohio 4617, ¶ 4. 2010 Ohio App. LEXIS 3882 (Ohio App. 4th Dist. 2010). On March 29, 2008, the night of his murder, Hamilton left a party he had been attending with Billie Newman,

2

the woman with whom he lived, but left his cell phone behind. Two voice mail messages from Hankison asking to see Hamilton were found on the phone after the murder. *Id.* at ¶ 6. After leaving the party, Hamilton drove to the trailer where Hankison lived with Emily Dees. *Id.* at ¶ 7. On his way out of the trailer to go to Hamilton's truck, Hankison inadvertently "struck Dees with a long knife, apologized, then stuck the knife in his shirt. *Id.*.. After a while, the truck pulled around back of the trailer and Hankison asked Dees for his "Carhartts," a distinctive brand of work clothes. *Id.* at ¶ 8. Hankison then went to a local gas station where he was known and bought gasoline in a container. *Id.* at ¶ 9. The attendant noticed both the Carhartts clothing and blood on it which Hankison explained as coming from a breech birth of some cattle he was assisting with. *Id.* at ¶ 10.

Less than an hour later, Hamilton's truck was found on fire with his dead body, stabbed three times, in it; the truck was a tenth of a mile from Hankison's trailer. *Id.* at ¶ 19. When Hankison returned to the trailer, he woke Dees, told her he had killed Hamilton, and ordered her to get out of bed an help him dispose of bloody clothing. *Id.* at ¶ 26. He explained the crime by blaming Hamilton for having made a statement which was going to result in revocation of Hankison's release from prison. *Id.* at ¶ 38. He had a stack of money and Hamilton's driver's license. *Id.* at ¶¶ 50-53.

Dees apparently recounted what she had seen and what Hankison had told her to her daughter, Jillian Mosley. When investigators spoke with them together, Dees denied knowing anything about Hamilton's murder but Mosley relayed what her mother had said. *Id.* at ¶ 76. After being confronted about the truth of her statement, Dees relented. She and Mosley then gave statements which led to Hankison's arrest. *Id.* at ¶ 84. A week later Dees discovered a pair of Hankison's sweatpants in a junk room in the trailer; DNA testing showed the blood on the

pants was Hamilton's. *Id.* at ¶ 85.

> On appeal Hankison argued his trial attorney was ineffective in four respects:
>
>> (1) trial counsel did not object to various hearsay statements; (2) the introduction of the door handles was not an approach that competent counsel would have followed; (3) competent counsel would have objected to any suggestion that Hankison had a criminal record; and (4) trial counsel raised the fact that Hankison invoked his right to remain silent.

*Id.* at ¶ 103. Only the first and fourth sub-claims are pled in the Petition.

The Fourth District began its analysis by citing the governing standard for ineffective assistance of trial counsel claims from *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at ¶ 104. Its evaluation of trial counsel's performance was heavily conditioned by its finding that:

> **[*P106]** the evidence against Hankison is overwhelming. Therefore, we must view trial counsel's actions in light of the overwhelming evidence of guilt. Trial counsel had a limited number of strategies or tactics to choose from. And after reviewing the record, we believe that trial counsel represented Hankison in a zealous and competent manner.
>
> **[*P107]** Here, trial counsel's defense strategy can be boiled down to three distinct propositions: (1) Dees fabricated her story about Hankison's involvement in Sonny's murder; (2) Hankison had no motive to kill Sonny (while other people did); and (3) somebody framed Hankison. Based on these three propositions, all of Hankison's complained-of actions were reasonable strategic decisions.

*Id.*

Thus the court of appeals agreed that Mosely's testimony about what her mother had told her was indeed hearsay. But "not objecting to Mosely's testimony constituted a reasonable trial strategy" (*Id.* at ¶ 110) because it was part of an absolutely essential attack on Dees' credibility by showing her inconsistent statements. Without the jury's disbelieving Dees, Hankison had no chance of success. *Id.* at ¶ 111. With respect to Detective Blaine's allegedly objectionable

4

hearsay testimony Hankison did not even attempt on appeal to show any such objection would have had merit and "failure to raise meritless issues does not constitute ineffective assistance of counsel."  *Id.* at ¶ 115, quoting its own prior decision, *State v. Norman,* Ross App. Nos. 08CA3059 & 08CA3066, 2009 Ohio 5458, at ¶ 69.  The court also found any omission regarding hearsay testimony would not have been prejudicial because Dees testified at length about Hankison's actions on the night of the murder, including his admission, and the jury believed her.  *Id.* at ¶ 116.

Regarding trial counsel's failure to object to testimony that Hankison invoked his privilege against self-incrimination, the Fourth District held:

### E. Hankison Invoking His Right to Silence

**[*P135]** At trial, defense counsel noted that Detective Blaine's post-arrest interview with Hankison ended when Hankison asked for a lawyer. For that reason, Hankison cites *Doyle v. Ohio (1976), 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91*, which essentially stands for the proposition that "a defendant's post[-]arrest silence cannot be used against him at trial." *State v. Holmes*, 181 Ohio App.3d 397, 2009 Ohio 1241, at P34, 909 N.E.2d 163. As such, Hankison contends that "there was absolutely nothing to be gained by informing the jury that Mr. Hankison had 'taken the Fifth' during the second interrogation, and for defense counsel to call attention to that fact was highly improper." Merit Brief of Nelson Hankison at 8.

**[*P136]** First, it is well settled that *Doyle* does not apply when *defense counsel* raises the defendant's post-arrest silence. See *State v. Reed*, Franklin App. No. 08AP-20, 2008 Ohio 6082, at P19-22. Therefore, any reliance on *Doyle* is misplaced. Furthermore, in *Reed*, the Tenth District Court of Appeals rejected a similar ineffective-assistance-of-counsel  argument. By eliciting information about the defendant's post arrest silence, the *Reed* court found that defense counsel had engaged in reasonable trial tactics. See id. at P23-25.

**[*P137]** Here, especially in light of the overwhelming evidence of guilt, we believe that Hankison's trial counsel also engaged in a

>  reasonable trial strategy. Trial counsel hoped to show that Hankison was indignant upon being accused of Sonny's murder. During Detective Blaine's cross-examination, trial counsel asked the following question: "[Hankison] tells you in no -- in emphatic words several times in the interview 'I know one thing for certain, I did not kill Sonny Hamilton,' correct?" Transcript at 557. Detective Blaine replied, "Correct." Transcript at 557. To bolster Hankison's denials, trial counsel attempted to portray Hankison asking for a lawyer as an act of indignation. Trial counsel engaged in a reasonable trial strategy, and we will not "second guess those strategic choices through hindsight." *State v. Love*, Ross App. No. 05CA2838, 2006 Ohio 1824, at P49, citing *Strickland* at 689. This is especially true considering the limited options available to Hankison's trial counsel.
>
>  **[*P138]** Finally, Hankison has not demonstrated that he was deprived of a fair trial because of trial counsel's references to the post-arrest interview. And in light of the overwhelming evidence of guilt, we cannot find that Hankison was prejudiced by any references to his post-arrest silence.
>
>  **[*P139]** Accordingly, we find no merit in Hankison's fourth argument. Having found no merit in any of Hankison's arguments, we overrule his assignment of error and affirm the judgment of the trial court.

*Id.*

Hankison has made no effort to show that the decision of the Fourth District was an objectively unreasonable application of *Strickland v. Washington, supra*.  Recognizing that *Strickland* provides the governing standard, counsel merely asserts "there was no identifiable strategic basis for the above-described omissions of trial counsel." (Memorandum in Support of Petition, Doc. No. 1, PageID 17-18.)  This assertion does not respond to the strategic analysis of the Fourth District, nor to its finding that the evidence of guilt was overwhelming.  Finally, Hankison filed no reply to the Return of Writ.

6

**Conclusion**

The decision of the Fourth District Court of Appeals on the merits is entitled to deference under 28 U.S.C. § 2254(d)(1) because it  is not an objectively unreasonable application of *Strickland v. Washington*, *supra*.  Therefore the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 11, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).